# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jeff Seipel, as Trustee of the Minnesota            Civil No. 07-4643 (DWF/JJK)
Laborers Health and Welfare Fund and
Minnesota Laborers Pension Fund and
each of their successors; James Brady and
Keith Kramer, as Trustees of the Minnesota
Laborers Vacation Fund and each of their
successors; Tom Vevea and Gary Reed, as
Trustees of the Construction Laborers'
Education, Training and Apprenticeship Fund
of Minnesota and North Dakota and each of
their successors; and Ronald Thornburg and
Cindy Ecklund, as Trustees of the Minnesota
Laborers Employers Cooperation and  Education
Trust and each of their successors,

          Plaintiffs,

v.                                                  **MEMORANDUM**
                                                    **OPINION AND ORDER**
John Heinlein Construction, Inc. and
Valley Concrete, Inc.,

          Defendants.

_____

David S. Anderson, Esq., and Pamela Hodges Nissen, Esq., Anderson Helgen Davis &
Nissen, LLC, counsel for Plaintiffs.

Nicholas J. Vivian, Esq., and Kevin S. Sandstrom, Esq., Eckberg, Lammers, Briggs,
Wolff & Vierling, PLLP, counsel for Defendants.
_____

## INTRODUCTION

This case involves a dispute concerning the collection of fringe benefit

contributions under a collective bargaining agreement (a "CBA").  This matter came

before the Court pursuant to the parties' cross motions for summary judgment.  For the reasons set forth below, the Court denies both motions.

## BACKGROUND

*Parties*

Collectively, Plaintiffs are multi-employer, jointly-trusteed fringe benefit plans and their trustees.  The plans were created and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act of 1947, as amended 29 U.S.C. § 186(c)(5). Defendants John Heinlein Construction, Inc. ("JHCI") and Valley Concrete, Inc. ("VCI") are Minnesota corporations located in Stillwater, Minnesota.  Both JHCI and VCI are engaged in the construction industry and will be collectively referred to as "Defendants."

*JHCI signs the CBA*

In May 2004, John Heinlein, Jr. ("Heinlein"), as President of JHCI, signed an Acceptance of Agreement, binding JHCI to the terms of a CBA negotiated between the Metropolitan Builders Division of Associated General Contractors of Minnesota and the Minnesota Concrete Contractors Association ("Associations") and the Laborers' District Council of Minnesota and North Dakota on behalf of its affiliated Local Unions ("Unions").  The Acceptance of Agreement, together with the standard preprinted form, constituted the CBA between JHCI and the Unions.  By signing the Acceptance of Agreement, JHCI delegated "its bargaining authority to the Associations for the term of this Agreement," and the CBA was set to expire in accordance with the terms set forth in Article 26 of the CBA.  (Affidavit of Kevin S. Sandstrom ("Sandstrom Aff."), ¶ 3, Ex. 1.)

2

The CBA requires JHCI to submit monthly fringe benefit reports and to make monthly fringe benefit contributions to Plaintiffs' funds on behalf of employees that performed covered work, regardless of whether those employees were members of the Unions or not.  The CBA also allows Plaintiffs to audit JHCI's financial and employment records to determine whether the company is in compliance with the CBA's reporting and payment obligations.

Article 26 of the CBA provides that it would remain in effect at least until April 30, 2007.  The CBA contains an automatic renewal clause, which is commonly called an "evergreen clause."  The parties disagree about the interpretation and application of the evergreen clause to the facts of this case, and they disagree about the impact, if any, of JHCI's actions after April 30, 2007.

*JHCI and VCI*

Plaintiffs contend that JHCI and VCI are alter egos and that, as a result, VCI is also bound to the CBA.  Defendants deny this allegation and maintain that the two companies are separate and distinct entities, both of which are permissible under the law. Heinlein and his wife, Lou Anne Heinlein, are the only owners, shareholders, and officers of JHCI.  JHCI was incorporated in 1987.  Heinlein, Lou Anne Heinlein, and their two children currently own VCI, which has been in existence since at least 2005. According to Heinlein, he uses VCI when he wants to use non-union labor, and there is some overlap between employees for the two companies.  In addition, the companies sometimes subcontract work to one another.

3

For both companies, Heinlein is the person primarily responsible for each company's activities. JHCI performs mainly concrete and masonry work. VCI performs concrete, masonry, general contracting, and excavation work. Both companies operate out of the same office space, although there is no lease between the two companies. Instead, VCI rents the office space and allows JHCI to utilize a portion of that space in exchange for use of JHCI's bookkeeper. Although JCHI owns various tools and machines, it does not currently own any equipment or vehicles; instead JHCI now uses VCI's equipment and vehicles, which JHCI had previously transferred to VCI through a verbal agreement. The companies do, however, have separate bank accounts, insurance contracts, corporate records, and tax returns. They also make separate material purchases and make and enter into separate bids and contracts.

## DISCUSSION

Plaintiffs and Defendants filed cross motions for summary judgment. Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477

U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of

material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*,

92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in

the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953,

957 (8th Cir. 1995). A party opposing a properly supported motion for summary

judgment "may not rest upon mere allegations or denials of his pleading, but must set

forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## I.    Article 26's Evergreen Clause

Entitled "Duration," Article 26 of the CBA provides:

A.    All terms of this Agreement become effective May 1, 2004.

B.    This Agreement shall remain in full force and effect through
April 30, 2007.

C.    Any party has the right to terminate or amend this Agreement by
giving notice to the other party sixty (60) days before the expiration of this
Agreement. Failure to give such notice shall cause this Agreement to be
renewed automatically for a further period of twelve (12) [months.]

D.    In the event such written notice is given and a new Agreement is not
signed before the expiration of this Agreement, then this Agreement shall
continue in force until a new Agreement is signed, negotiations are formally
broken off, or until a strike or lockout occurs.

(Affidavit of Rod Skogg, ¶ 3, Ex. B.)

The parties agree that neither JHCI nor any of its authorized agents provided written notice to Plaintiffs to amend or terminate the CBA, as required by Section C of Article 26.  In a letter dated February 20, 2007, however, one of the Unions' representatives sent JHCI a letter that stated the following:

> In accordance with Article 26 of the current Laborers Agreement between the Metropolitan Builders Division of Associated General Contractors of Minnesota and Minnesota Concrete and Masonry Contractors Association and the Laborers District Council of Minnesota and North Dakota On Behalf of Its Affiliated Local Unions (Metropolitan Builders Agreement), this letter shall serve as notice that the Union has opened the Agreement for the purpose of negotiating amendments.

(Sandstrom Aff., ¶ 4, Ex. 2.)[1]  Sometime thereafter, the parties also agree that the Unions and the Associations negotiated a new CBA, which was finalized before April 30, 2007. JHCI did not sign the new CBA.

Both parties contend that Article 26 is unambiguous.  They disagree, however, about the effect of the February 20, 2007 letter, the interpretation of Article 26, and the application of the facts in this case to Article 26.  Plaintiffs contend that the February letter did not provide notice of termination or amendment but rather "merely advised JHCI that the CBA would be open for the bargaining parties to negotiate amendments." (Plfs' Mem. in Supp. of Summ. J. at 19.)  Specifically, Plaintiffs argue that "in order to prevent application of the automatic renewal provision, a notice of termination was

---

[1]     On that same date, one of the Unions' representatives sent the Associated General Contractors of Minnesota a similar letter, except that the last phrase stated "this letter shall serve as notice of the Unions' desire to open the Agreement for the purpose of

(Footnote Continued on Next Page)

required." (*Id.*)  Because JHCI never provided a notice to terminate, Plaintiffs maintain

that the CBA was automatically renewed for twelve months pursuant to Section C of

Article 26.

Conversely, Defendants contend that the February letter invoked the Unions'

rights to make amendments to the CBA under Article 26(C), which therefore nullified

Article 26(C)'s automatic twelve-month renewal provision.  Defendants maintain that the

CBA does not require notice of termination to avoid the automatic renewal provision but

rather either notice of amendment or termination.

The interpretation of a CBA is similar to the interpretation of a contract.  A

determination of whether a contract is ambiguous is a question of law for the Court, and

then resolution of the ambiguity is a question of fact to be determined by a jury.  *John

Morrell and Company v. Local Union 304A of the United Food and Comm. Workers,

AFL-CIO*, 913 F.2d 544, 550-51 (8th Cir. 1990).  On the record before the Court,

especially considering the February 20, 2007 letter, Article 2 of the CBA which defines

"parties," and Article 26 which includes section (D), the Court determines that Article 26

is reasonably susceptible to more than one interpretation and is therefore ambiguous.

Given this, the Court denies both parties' summary judgment motions to the extent that

they seek a ruling as to whether the evergreen clause of the CBA was invoked.

In making this determination, the Court reviewed all of the cases cited by the

---

(Footnote Continued From Previous Page)
negotiating amendments."  (Sandstrom Aff., ¶ 5, Ex. 3.)

parties, specifically those cases holding that a notice to terminate a CBA must be clear and explicit.  The Court notes, however, that those cases do not address the specific issue presented in this case.  In particular, those cases do not address the Article 26(C) trigger of notice to terminate *or* amend or the fact that Article 26(D) does not anticipate a situation where notice is given and a new agreement is signed but not by all parties to the original CBA.

### II.     JHCI's Conduct After April 30, 2007

After April 30, 2007, JHCI submitted fringe benefit reports and contributions to the Plaintiffs for the months of May through July 2007.  Later, JHCI submitted outstanding fringe benefit reports and contributions for the months of August through November 2007 and, at some point, JHCI also cooperated with Plaintiffs' audit.  During this time, the Unions made repeated requests to JHCI to renew its membership and to sign the new CBA.  JHCI denied those requests.

Plaintiffs assert that the eight months of payments by JCHI and JHCI's submission to the audit demonstrate JHCI's intent to be bound to the CBA after April 30, 2007.  Defendants respond that JHCI's conduct is insufficient as a matter of law to bind JHCI to an extension of the CBA.  Rather, Defendants explain that JHCI mistakenly paid Plaintiffs $22,760.72 in the face of Plaintiffs' continued requests for payments.[2]

---

[2]     Defendants have not alleged a counterclaim against Plaintiffs, but in their Memorandum in Support of their Motion for Summary Judgment, they seek a refund of the $22,760.72 paid to Plaintiffs.

(Footnote Continued on Next Page)

Defendants also assert that JHCI's denial of the Unions' request to renew its membership and sign the new CBA belie any argument that JHCI's conduct manifested an intent to be bound to an extension of the CBA.  Finally, Defendants note that they only submitted to the audit in response to a discovery request received after Plaintiffs commenced this action.

A labor agreement may be adopted through conduct manifesting an intention to be bound.  *See, e.g., NLRB v. Int'l Bhd. of Elec. Workers*, 748 F.2d 348, 350 (8th Cir. 1984); *Trustees of Atlanta Iron Workers, Local 387 Pension Fund v. Southern Stress Wire Corp.*, 724 F.2d 1458, 1459 (11th Cir. 1983).  Considering the record before it, the Court concludes that there are genuine issues of material fact with respect to whether JHCI's conduct manifested an intent to be bound to the CBA after April 30, 2007.  Therefore, the Court denies both parties' summary judgment motions to the extent that they seek a ruling as to whether JHCI's conduct after April 30, 2007, bound JHCI to the CBA after that date.

**III.    Alter Ego Claim**

(Footnote Continued From Previous Page)

Plaintiffs maintain that VCI is an alter ego of JHCI and should be bound to the CBA.  Plaintiffs also maintain that as an alter ego, VCI is jointly and severally liable to Plaintiffs for unpaid fringe benefit contributions, attorney fees and costs, prejudgment interest and liquidated damages.[3]  In response, Defendants contend that the two companies are distinct "double-breasted" legal entities with different focuses, specifically, one utilizes union labor for commercial projects and one utilizes non-union labor for decorative residential projects.

The parties agree that the corporate law alter ego test should be used to determine if VCI is an alter ego of JHCI.  *See Greater Kan. City Laborers Pension Fund v. Superior Gen. Contractors, Inc.*, 104 F.3d 1050, 1055 (8th Cir. 1997).  The corporate law standard "strikes an appropriate balance between the congressional intent of ERISA and the long-established principle that a corporation's existence is presumed to be separate and may be disregarded only under narrowly prescribed circumstances."  *Id*.  The Eighth Circuit employs a two-prong inquiry to evaluate the corporate law alter ego test:  (1) whether there is such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct; and (2) whether adherence to the corporate fiction would sanction a fraud, promote injustice, or lead to an evasion of legal obligations.  *Minnesota Laborers Health and Welfare Fund v. Scanlan*, 360 F.3d 925, 927-28 (8th Cir. 2004).

---

[3]     Defendants' allegations about Plaintiffs miscalculation will be addressed at trial.

While the parties do agree on the use of the corporate law alter ego test, they disagree about how the facts of this case impact the outcome of the corporate law alter ego test.  Considering the record before the Court and the test to be employed, the Court concludes that genuine issues of material fact exist that preclude summary judgment as to the issue of whether VCI is an alter ego of JHCI.  Given this, the Court denies both parties' summary judgment motions to the extent that they seek a ruling on the alter ego issue.

### IV.     Heinlein and Boucher Affidavits

In connection with their motion for summary judgment and opposition memorandum to Plaintiffs' summary judgment motion, Defendants submitted an affidavit and supplemental affidavit by Heinlein and an affidavit by Charlene Boucher, JHCI's bookkeeper.  Plaintiffs contend that these affidavits should be striken from the record because they were submitted after these individuals were deposed and they contradict earlier deposition testimony.  As the Court noted at the motion hearing, the submission of post-deposition affidavits is heavily debated in this District.  While the Court does not particularly condone such practices, in this case, it has reviewed the deposition testimony submitted as well as the affidavits submitted and has concluded that the affidavits submitted merely fill in the gaps, as opposed to contradict, earlier deposition testimony.  Given this, to the extent Plaintiffs' request is a request to remove material from the record, it is denied.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Plaintiffs' Motion for Summary Judgment (Doc. No. 18) is **DENIED**.

2.      Defendants' Motion for Summary Judgment (Doc. No. 14) is **DENIED**.


Dated:  May 18, 2009                s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    Judge of United States District Court